IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
131 M ST NE
WASHINGTON, DC 20002,

Plaintiff,

v.

WASHINGTON HOSPITAL CENTER CORPORATION d/b/a MEDSTAR WASHINGTON HOSPITAL CENTER,
110 IRVING STREET, NW
WASHINGTON, DC 20010,

and

MEDSTAR HEALTH, INC.,
10980 GRANTCHESTER WAY, 6TH FLOOR
COLUMBIA, MD 21044,

Defendants.

CIVIL ACTION NO. 18-2160

**COMPLAINT**

**JURY TRIAL DEMANDED**

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, to correct unlawful employment practices on the bases of disability and retaliation. In this action, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") seeks to provide appropriate relief to Melissa Boyd ("Boyd"), who was employed by Defendants Washington Hospital Center Corporation d/b/a MedStar Washington Hospital Center and MedStar Health, Inc. ("Defendants" or "MedStar") as a Patient Care Technician.

As alleged with greater particularity below, Defendants violated the ADA when they discriminated against Boyd on the basis of disability and retaliated against her because she engaged

in protected activity.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Washington Hospital Center Corporation d/b/a MedStar Washington Hospital Center ("MWHC") has continuously been doing business in Washington, D.C.

5. At all relevant times, MWHC has had at least 15 employees.

6. During each calendar year from 2014 through and including 2018, MWHC has had more than 500 employees.

7. At all relevant times, MWHC continuously has been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

8. At all relevant times, MWHC continuously has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

9. MWHC is a not-for-profit hospital located in Washington, D.C.

10. MWHC is a member of the MedStar Health regional health care system that encompasses hospitals in the District of Columbia and Maryland.

11. At all relevant times, Defendant MedStar Health, Inc. ("MedStar Health") has continuously been doing business in Washington, D.C.

12. At all relevant times, MedStar Health has had at least 15 employees.

13. During each calendar year from 2014 through and including 2018, MedStar Health has had more than 500 employees.

14. At all relevant times, MedStar Health continuously has been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

15. At all relevant times, MedStar Health continuously has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

16. MedStar Health, Inc. is a corporation formed to provide accounting, fundraising, administration, fiscal management, strategic planning, and other business services for the hospitals that make up the MedStar Health system, including MWHC.

17. MedStar Health, Inc. oversees occupational health practice and policy development for its supported hospitals, including MWHC.

18. At all relevant times, each named Defendant has functioned as an employer, or Defendants have functioned as an integrated enterprise/single employer or joint employers.

## ADMINISTRATIVE PROCEDURES

19. More than 30 days prior to the institution of this lawsuit, Boyd filed a charge with the Commission alleging violations of the ADA.

20. On May 3, 2018, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

21. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

22. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

23. On June 22, 2018, the Commission issued to Defendants a Notice of Failure of Conciliation advising that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

24. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

25. In or about October 2015, and continuing thereafter, Defendants engaged in unlawful employment practices in violation of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b), by discriminating against Melissa Boyd on the basis of disability, and in violation of Title V of the ADA, 42 U.S.C. § 12203(a), by retaliating against her for engaging in protected activity as follows:

a. In September 2014, Boyd began working as a Patient Care Technician at MWHC.

b. Boyd was qualified for the Patient Care Technician job.

c. At all relevant times, Defendants have maintained a Modified Work Program under which disabled employees who are "unable to perform the full range of their regularly assigned duties" may be placed in modified work assignments.

d. The Modified Work Program provides that, "[m]odified duty is not to exceed 90 days."

e. Under the Modified Work Program, Defendants require disabled employees whose modified duty assignments expire or are terminated to return to work without any restrictions or be placed off duty.

f. Defendants further require employees with disabilities who are in need of reassignment to a vacant position for which they are qualified as an accommodation to apply and compete for vacant positions and be selected as the best qualified candidate.

g. On or about October 1, 2015, Boyd was injured at work when a hospital employee struck her in the knee with a stretcher. Thereafter, Boyd's major life activities were limited as described below.

h. Immediately following the October 1, 2015 incident, Boyd reported to the Occupational Health department at MWHC, where she was examined by nurse practitioner Joan Kuczka, a MedStar Health employee.

i. Kuczka placed Boyd off duty.

j. Boyd is substantially limited in her ability to engage in major life activities including, but not limited to, walking and standing.

k. At all relevant times, Boyd was a person with a disability as defined by the statute.

l. On or about October 7, 2015, Kuczka was notified that Boyd's doctor had released her to return to work with restrictions. Defendants did not permit Boyd to return to work

at that time.

m. Beginning on or about October 7, 2015, and continuing through and including February 21, 2016, Boyd's doctors issued repeated releases for Boyd to return to work and extended the duration of the restrictions. Kuczka was notified of each release.

n. From on or about October 7, 2015 until on or about November 24, 2015, Defendants did not permit Boyd to return to work.

o. On or about November 24, 2015, Defendants placed Boyd in their Patient Advocacy department.

p. Boyd worked in the Patient Advocacy department for ninety (90) days, through February 21, 2016.

q. Boyd was off work from on or about February 22, 2016 through March 8, 2016, for surgery and recovery related to her medical treatment and condition.

r. On or about March 8, 2016, Boyd's doctor released her to return to work with restrictions.

s. On or about March 9, 2016, Defendants again placed Boyd in their Patient Advocacy department.

t. Boyd worked in the Patient Advocacy department for approximately eighty (80) days, until on or about May 27, 2016.

u. On or about May 27, 2016, Boyd provided Kuczka with an updated release to return to work with restrictions.

v. On or about May 27, 2016, after receiving Boyd's updated release to return to work with restrictions, Kuczka informed her that she could no longer work in the Patient Advocacy department, and she directed her to collect her belongings and leave the

premises.

w. On or about May 27, 2016, Boyd filed an internal grievance regarding the termination of her work in the Patient Advocacy department.

x. On or about June 24, 2016, Boyd provided Kuczka with an updated doctor's release to return to work with restrictions.

y. On June 29, 2016, Boyd met with Defendants' Director of Employee/Labor Relations, Robbin Hargrove, and Human Resources Generalist and recruiter Janiece Jones, regarding her grievance.

z. On August 14, 2017, law firm Jackson Lewis P.C. ("Jackson Lewis") sent a letter to the United States Equal Employment Opportunity Commission that stated that notes taken by Janiece Jones during the June 29, 2016 meeting were attached thereto in Exhibit A.

aa. The notes in the Exhibit A attached to the letter described in Paragraph 25(z) reflect that Hargrove and Jones told Boyd she needed to apply for jobs for which she met the qualifications, that her physician had to clear her for the types of positions for which she was applying, and then Occupational Health had to clear her for the jobs as well.

bb. At the June 29, 2016 meeting, Hargrove and Jones told Boyd she needed to apply for jobs for which she met the qualifications, that her physician had to clear her for the types of positions for which she was applying, and then Occupational Health had to clear her for the jobs as well.

cc. On July 19, 2016, Boyd's doctor again released her to return to work and detailed her restrictions.

dd. Boyd provided the July 19, 2016 release to return to work with restrictions to

Kuczka.

ee. At some time prior to July 20, 2016, Defendants were notified that Boyd had filed a charge of disability discrimination with EEOC.

ff. On April 26, 2017, Jackson Lewis sent a letter to EEOC that stated that portions of Boyd's Occupational Health file were attached thereto as Exhibit B.

gg. Exhibit B to the letter described in Paragraph 25(ff) contained an Individual Encounter record, bearing the date and time of July 20, 2016 at 2:18 PM, and relating to an occupational injury follow-up visit Boyd had with Kuczka.

hh. The Individual Encounter record described in Paragraph 25(gg) states that Kuczka told Boyd that she could not be cleared for any new position if she would likely need another surgery.

ii. On July 20, 2016, Kuczka met with Boyd and told her that she could not be cleared for any new position if she would likely need another surgery.

jj. Since October 1, 2015, Defendants have filled positions the essential functions of which Boyd was able to perform with her medical restrictions, with or without reasonable accommodations.

kk. Boyd was qualified for at least some of the positions referred to in Paragraph 25(jj).

ll. Since October 1, 2015, Boyd has applied with Defendants for positions the essential functions of which she was able to perform with her medical restrictions, with or without reasonable accommodations.

mm. Boyd was qualified for at least some of the positions described in Paragraph 25(ll).

nn. For Boyd to be reassigned to any of the positions described in Paragraphs 25(jj)-(mm), Defendants required Boyd to apply, compete with other applicants, and be selected

as the best qualified candidate.

oo. Defendants have not reassigned Boyd to any position for which she was qualified and could perform the essential functions of the job, with or without reasonable accommodations.

pp. Defendants knew or should have known that Boyd was in need of reassignment or other accommodation.

qq. Defendants failed to reassign or provide another accommodation to Boyd.

26. The effect of the practices complained of in Paragraph 25 has been to deprive Melissa Boyd of equal employment opportunities and otherwise adversely affect her status as an employee on the basis of disability, in violation of the ADA.

27. The effect of the practices complained of in Paragraph 25 has been to deprive Melissa Boyd of equal employment opportunities and otherwise adversely affect her status as an employee on the basis of her engaging in protected activity, in violation of the ADA.

28. The unlawful employment practices complained of in Paragraph 25 were intentional.

29. The unlawful employment practices complained of in Paragraph 25 were done with malice or with reckless indifference to the federally protected rights of Melissa Boyd.

## PRAYER FOR RELIEF

30. Wherefore, the Commission respectfully requests that the Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in disability discrimination and retaliation against employees and from engaging in any other employment practices that discriminate on the basis of disability or protected activity;

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and that eradicate the effects of their past and present unlawful employment practices;

C. Order Defendants to make whole Melissa Boyd, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Melissa Boyd or, in lieu thereof, front pay;

D. Order Defendants to provide compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trail;

E. Order Defendants to provide compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including pain and suffering, emotional distress, indignity, inconvenience, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trail;

F. Order Defendants to pay punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial;

G. Grant such further relief as the Court deems necessary and proper in the public interest; and

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington, D.C.

JAMES L. LEE
Acting General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

DEBRA LAWRENCE
Regional Attorney
Philadelphia District Office

KATE NORTHRUP
Supervisory Trial Attorney
Baltimore Field Office
kate.northrup@eeoc.gov
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Tel. (410) 209-2722

JESSI ISENHART
Senior Trial Attorney
Cleveland Field Office
jessi.isenhart@eeoc.gov
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
Tel. (216) 522-7676